Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF NEBRASKA**

JON GOLDENSTEIN,

Plaintiff,

v.

CITY OF ASHLAND, NEBRASKA, a Nebraska municipal corporation,

Defendant.

Case No.: 8:26-cv-00593

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

**Jury Trial Demanded**
**Trial Location: Omaha**

## INTRODUCTION

1. A police department may not open a public comment forum to its community and then close it to the citizens who criticize the police. The City did exactly that. When Plaintiff Jon Goldenstein posted comments critical of small-town police departments on the official Facebook page of the Ashland Police Department, the City restricted commenting on the Page, deleted his comments, and banned him. Then it told him why, in writing: he was "just there to bash a department" he did not know, "so we no longer need your input."

2. Two days later, after the exchange became public, the City posted a pinned statement announcing that the Page had never been intended as an "open forum" for people who "generally disapprove of, or hate law enforcement," and that if such content came to define the Page, "it will be shut down permanently."

3. That is viewpoint discrimination, and it is unconstitutional. The First Amendment does not permit a government agency to curate the criticism directed at it, and a government forum may not be conditioned on the approval its speakers express.

4. Plaintiff brings this action under 42 U.S.C. § 1983 for declaratory relief, injunctive relief, nominal and compensatory damages, and attorney's fees under 42 U.S.C. § 1988, for the violation of his First and Fourteenth Amendment rights.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) and (a)(4) because it seeks redress for the deprivation, under color of state law, of rights secured by the Constitution.

6. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Federal Rule of Civil Procedure 65.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because the City resides in this District and because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff Jon Goldenstein is a natural person and a citizen of the State of Nebraska. At all relevant times he operated a personal Facebook account under the display name "Joe N Sidney." That is the only account he has ever used to interact with the Page.

9. Although Plaintiff's mailing address is in Omaha, he resides within the jurisdiction of the City of Gretna, Nebraska. Gretna issues his building permits, and the Gretna school district

serves his children. The subject of the comment thread at issue was whether Gretna should establish its own police department.

10. Defendant City of Ashland, Nebraska is a municipal corporation organized under the laws of the State of Nebraska, located in Saunders County. The City operates the Ashland Police Department. The City is a "person" subject to suit under 42 U.S.C. § 1983.

**THE PAGE IS A GOVERNMENT FORUM**

11. The City operates a Facebook page under the name "Ashland Nebraska Police Department" (the "Page").

12. The Page identifies itself on its face as a "Government organization." It is presented to the public as the official Facebook presence of the Ashland Police Department. As of the events alleged here, approximately 1,900 people followed the Page.

13. The City uses the Page to conduct official police business, including posting crime alerts, community notices, and requests for public assistance in identifying suspects.

14. On or about June 29, 2026, the City posted a photograph of an unidentified individual on the Page and asked the public for help identifying him.

15. On information and belief, no person other than a City official or employee has authority to post on the Page as the Ashland Police Department, to moderate its comments, or to block users from it.

16. The Chief of Police, Ryan Brady, administers the Page. The City identifies him as Police Chief in its published staff directory, together with the Department's telephone number, (402) 944-2222. On June 30, 2026 at approximately 1:33 p.m., Plaintiff telephoned Ashland City Hall at (402) 944-3387 and asked who managed the Page. A City employee told him that the Chief of Police manages it.

17. The Page permits members of the public to comment on posts and to reply to one another's comments. The City has opened those comment threads to a broad range of public expression, including expression about municipal policy unrelated to the subject of the underlying post.

18. The comment thread beneath the June 29, 2026 post is an example. Members of the public used it to debate whether the neighboring community of Gretna would or should establish its own police department, why Ashland and Bennington have police departments while Gretna does not, the history of policing in surrounding communities, and the cost of staffing a municipal force. The City participated in that discussion from the Page's official account and did not remove those comments, restrict their authors, or object to the subject matter.

19. The interactive comment spaces of the Page are a designated public forum, or at a minimum a limited public forum, for First Amendment purposes.

20. The Chief of Police possesses actual authority to speak on behalf of the City on matters of law enforcement and public safety, and the City, acting through him, purported to exercise that authority in operating the Page and in taking the actions alleged below.

**FACTUAL ALLEGATIONS**

21. On June 29, 2026 at 10:21 p.m., Plaintiff replied to a comment posted by Robert Johnson in the thread beneath the June 29, 2026 post.

22. On June 29, 2026 at 10:23 p.m., Plaintiff replied to a comment posted by Patrick Lerdahl in the same thread.

23. On June 30, 2026 at 9:29 a.m., Plaintiff again replied to Robert Johnson's comment.

24. On June 30, 2026 at 9:47 a.m., Plaintiff again replied to Patrick Lerdahl's comment.

25. In substance, Plaintiff's replies expressed the view that small-town police departments are prone to corruption and that Gretna should not establish one.

26. Plaintiff's comments were critical of law enforcement. They contained no threat, no obscenity, no commercial solicitation, and no personal attack on any identified individual.

27. The City replied to Plaintiff from the Page's official account.

28. On June 30, 2026 at approximately 10:00 a.m. — roughly thirteen minutes after Plaintiff's last reply — the City altered the Page's settings so that only persons who had followed the Page for more than 24 hours could comment. A banner appeared on the Page's posts stating that only people who follow the Page for more than 24 hours can comment.

29. The City imposed that restriction in direct response to Plaintiff's comments and in order to prevent Plaintiff from responding further. Plaintiff attempted to reply and was unable to do so.

30. The City deleted Plaintiff's comments from the Page. They no longer appear in the thread.

31. Facebook's account data export omits comments made on content that a page has removed. Because the City deleted Plaintiff's comments, the export Plaintiff obtained from Facebook for the period June 29 through July 1, 2026 does not contain them. The only complete record of what Plaintiff actually wrote is within the City's control.

32. On June 30, 2026 at 10:11 a.m., Plaintiff sent a message to the Page through Facebook Messenger objecting that limiting who can comment violates the rights of the public.

33. The City replied at 1:17 p.m. from the Page's official account. The City stated that there is no constitutional right to comment; that Plaintiff had "made it clear you're just there to bash a department you don't know, so we no longer need your input"; that comments are

restricted to "established followers," which "is all that changed today"; that it "isn't hard to either be helpful on a post like that one, or be silent"; and that the City would "continue to limit those comments to established followers."

34. The City further stated that Plaintiff's "criticism is vague and general, and you're allowed to post it on your personal page"; that Plaintiff did "not appear to have any affiliation with Ashland, or it's Police Department"; that "this post is not the place for you to complain about law enforcement in general"; and that "[t]here is no requirement to let someone troll an account."

35. The City repeatedly directed Plaintiff to deliver his criticism in person at the police station at 2304 Silver Street, Ashland, Nebraska 68003, and stated that "[t]here will be no further response from this account."

36. Plaintiff replied that the City had limited his speech in response to his criticism and that doing so was viewpoint discrimination.

37. At approximately 1:26 p.m. on June 30, 2026, Plaintiff attempted to send a further message asking the City to identify the person writing so that he could submit a public records request. That message failed to send. It failed because the City had blocked Plaintiff from the Page.

38. Immediately after the exchange, at 1:33 p.m., Plaintiff telephoned Ashland City Hall as alleged above. He asked to speak with the Mayor and was transferred to voicemail. The Mayor never returned his call.

39. On June 30, 2026 at 2:35 p.m. and 2:52 p.m., Plaintiff posted comments on the separate Facebook page of the City of Ashland, Nebraska, stating that the Police Chief should be removed for violating the rights of the people and that the City was exposing itself to litigation.

40. While the 24-hour restriction was in effect, other members of the public remained able to comment on the Page subject to that restriction. Plaintiff's exclusion was not temporary. He has never regained access.

41. Since June 30, 2026, Plaintiff has been unable to view the Page, to search for the Page, to comment, to reply, or to send messages to it. A user blocked by a Facebook page cannot locate that page at all.

42. The Page remains active and publicly accessible. As of the filing of this Complaint it is published at facebook.com/AshlandNebraskaPoliceDepartment, under the same name and address it has used at all relevant times, and is followed by approximately 1,900 accounts. Any member of the public may locate it, read it, and follow it. Plaintiff alone cannot.

43. The Page's public description states that it is the official page of the Ashland Police Department, advises that the account is not monitored at all hours, directs the public to call 911 for emergencies, and publishes the Department's non-emergency telephone number, (402) 944-2222, and its after-hours number, (402) 443-1000.

44. The Page's public description further states: "Comments will generally be restricted to established followers."

45. That sentence is the only written rule published anywhere on the Page. It governs who may comment. It says nothing about blocking or banning a user, nothing about removing a comment once posted, nothing about what makes a comment off-topic, abusive, or unwelcome, and nothing about how an excluded person may object or seek reinstatement.

46. Plaintiff was not restricted to the status of a non-follower. He was blocked from the Page entirely, which no published rule of the Page addresses.

47. By its terms the published statement admits of unstated exceptions. A rule that applies "generally" is a rule whose exceptions rest in the judgment of whoever administers the Page.

48. The City's practice permits Page administrators to suppress speech based on their own assessment of whether a contribution is "helpful," whether the speaker has a sufficient "affiliation with Ashland," and whether the speaker is a "troll."

49. On or about July 2, 2026 at approximately 2:00 p.m., the City posted a pinned statement on the Page responding to criticism it had received from other members of the public.

50. In that statement, the City asserted that it may turn off comments on all posts; that it "ha[s] the right to only allow comments from established followers, and that has been the policy of this page since its creation"; and that it would "continue to follow that model."

51. That assertion cannot be reconciled with what the City told Plaintiff two days earlier. On June 30, 2026, the City told Plaintiff that restricting comments to "established followers" was "all that changed today." Either the restriction was new, in which case the City imposed it in response to Plaintiff's speech, or it was longstanding, in which case the City applied it selectively while permitting other commenters in the same thread to participate freely.

52. The City's July 2, 2026 statement further asserted that "'[l]imited forum' is the forum we allow, restricted to established followers," and that "[t]he intent of this page was never to allow an 'open forum' for all public from all over the world to comment on our posts how they generally disapprove of, or hate law enforcement. If that becomes the content of this page, it will be shut down permanently."

53. By that statement the City announced that the continued existence of the forum is conditioned on the viewpoint its participants express.

54. On information and belief, the City has no written policy governing comment moderation, restriction, or blocking on the Page. The City exercises unbridled discretion in deciding whose speech to remove and whom to exclude.

55. On information and belief, Plaintiff is not the only person the City has blocked, banned, or restricted from the Page. The identities of those persons are within the City's exclusive control.

56. The City gave Plaintiff no notice that his comments would be removed, no statement of any rule he had violated, no opportunity to be heard before he was banned, and no procedure for challenging the ban.

57. The City's ban is indefinite and remains in effect.

58. The City is on notice of this dispute and of its obligation to preserve the Page and the records within its control, including its comment history, its administrative activity log, its list of blocked and restricted users, the comments of Plaintiff that it removed, and all communications concerning Plaintiff.

## MUNICIPAL LIABILITY

59. The Chief of Police is the final policymaker for the City with respect to the operation of the Ashland Police Department's communications with the public, including the Page.

60. The decisions to restrict commenting, to delete Plaintiff's comments, and to ban Plaintiff were made or ratified by the Chief of Police and therefore constitute official policy of the City.

61. The City's July 2, 2026 statement confirms as much. The City described its conduct not as an isolated act but as "the policy of this page since its creation," and announced that it would "continue to follow that model."

62. In the alternative, the City has a custom or practice of removing critical comments and excluding critical speakers from the Page, and the City has failed to adopt any policy, provide any training, or impose any supervision governing moderation of the Page, despite the obvious risk that unconstrained moderation authority would result in viewpoint discrimination.

63. The City was on notice of that risk. Plaintiff notified City Hall and the Mayor's office on June 30, 2026 and posted publicly on the City's own Facebook page the same day. The City took no corrective action.

**FIRST CLAIM FOR RELIEF**
**Violation of the First and Fourteenth Amendments**
**Viewpoint Discrimination**
**42 U.S.C. § 1983**
**(Against Defendant City of Ashland)**

64. Plaintiff incorporates each preceding paragraph.

65. The interactive comment spaces of the Page are a designated or limited public forum.

66. The City excluded Plaintiff from that forum, and deleted his speech within it, because of the viewpoint he expressed.

67. Viewpoint discrimination is impermissible in any forum. The City's conduct is presumptively unconstitutional and cannot survive any level of scrutiny. The City has no compelling, substantial, or even legitimate interest in silencing criticism of the police, and its exclusion of Plaintiff was neither narrowly tailored nor reasonable.

68. The City acted under color of state law.

69. Plaintiff was injured by the deprivation of his First Amendment rights.

**SECOND CLAIM FOR RELIEF**
**Violation of the First and Fourteenth Amendments**
**Retaliation**
**42 U.S.C. § 1983**
**(Against Defendant City of Ashland)**

70. Plaintiff incorporates each preceding paragraph.

71. Plaintiff engaged in protected speech by criticizing law enforcement on a government forum and by objecting that the City's restriction of that forum was unlawful.

72. The City took adverse action against Plaintiff by deleting his comments, restricting the forum, and banning him from the Page. Those actions would chill a person of ordinary firmness from continuing to engage in protected speech.

73. The City's adverse actions were motivated by, and would not have occurred but for, Plaintiff's protected speech. The City said so in writing, and the timing confirms it: the restriction went into effect within roughly thirteen minutes of Plaintiff's final reply, and the ban followed within hours of his objection.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that the interactive comment spaces of the Page are a government forum; that the City's deletion of Plaintiff's comments, restriction of the forum, and ban of Plaintiff violated the First and Fourteenth Amendments; and that the City may not exclude any person from the Page on the basis of viewpoint;

B. Enjoin the City to restore Plaintiff's full access to the Page, including the ability to view, comment, reply, and send messages;

C. Enjoin the City from blocking, banning, muting, or restricting any person from the Page, or removing any comment from the Page, on the basis of viewpoint, and from deactivating or deleting the Page for the purpose of avoiding that obligation;

D. Order the City to adopt, publish, and apply a written comment moderation policy containing narrow, objective, and definite standards, together with notice and an opportunity to be heard before any exclusion, and to preserve records of all moderation actions;

E. Order the City to restore and produce Plaintiff's deleted comments;

F. Award Plaintiff nominal damages;

G. Award Plaintiff compensatory damages according to proof;

H. Award attorney's fees, expenses, and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1920;

I. Award pre- and post-judgment interest; and

J. Grant such other relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 5, 2026

Respectfully submitted,

By: /s/ Mark L. Javitch
Bar Number: CA 323729
Attorney for Plaintiff Jon Goldenstein
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, California 94401
Telephone: (650) 781-8000
Fax: (650) 300-0343
Email: mark@javitchlawoffice.com